917 F.2d 565
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
William P. VanDAALWYK, Defendant-Appellant.
 No. 88-2825.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 2, 1990.*
Decided Oct. 31, 1990.
 
 Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.
 
 ORDER
 
 1
 William P. VanDaalwyk is presently serving two concurrent terms of twenty years in prison for conspiracy and for possession of cocaine with intent to distribute. As part of his sentence for possession, he has been sentenced to serve a special parole term of six years after his release from confinement. We affirmed the conviction on direct appeal, 840 F.2d 494 (7th Cir.1988). VanDaalwyk then brought a motion under Fed.R.Crim.P. 35(a) (in its pre-1987 form) stating that it was unlawful for the court to have imposed the special parole term. The district court rejected VanDaalwyk's argument, and he brought a timely appeal to this Court. We now affirm.
 
 
 2
 This case presents an unusual reversal of roles: VanDaalwyk earnestly argues that he was convicted of possessing a large quantity of cocaine while the Government is equally earnest in its argument that VanDaalwyk had only a relatively small quantity. The reason for this odd alignment is the odd penalty structure for narcotics offenses under 21 U.S.C. Sec. 841(b)(1) as it stood in 1985 (the Comprehensive Crime Control Act of 1984) when VanDaalwyk's crimes were committed.[1] In relevant part, that statute read:
 
 
 3
 (A) In the case of a violation of subsection (a) of this section involving--
 
 
 4
 (i) 100 grams or more of a controlled substance in schedule I or II which is a mixture or substance containing a detectable amount of a narcotic drug other than a narcotic drug consisting of--
 
 
 5
 (I) coca leaves;
 
 
 6
 (II) a compound, manufacture, salt, derivative, or preparation of coca leaves; or
 
 
 7
 (III) a substance chemically identical thereto;
 
 
 8
 (ii) a kilogram or more of any other controlled substance in schedule I or II which is a narcotic drug;
 
 
 9
 (iii) 500 grams or more of phencyclidine (PCP); or
 
 
 10
 (iv) 5 grams or more of lysergic acid diethylamide (LSD);
 
 
 11
 such person shall be sentenced to a term of imprisonment of not more than 20 years, a fine of not more than $250,000, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 40 years, a fine of not more than $500,000, or both.
 
 
 12
 (B) In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A) and (C)[2], such person shall be sentenced to a term of imprisonment of not more than 15 years, and a fine of not more than $125,000, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, a fine of not more than $250,000, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 6 years in addition to such term of imprisonment.
 
 
 13
 VanDaalwyk's case differs somewhat from a typical narcotics prosecution in that VanDaalwyk was convicted on an amended indictment which charged him with possession of a "measurable quantity" of cocaine with intent to distribute. The original indictment had charged VanDaalwyk with possession of "approximately 1,187.2 grams" of cocaine, which the Government had found in a safe controlled by VanDaalwyk. The search of the safe was later determined to have been improper, and the cocaine found in it was suppressed. Nonetheless, after amendment of the indictment, the government was able to prove that VanDaalwyk had kept cocaine in the safe. No particular quantity needed to be shown to support the conviction, and the government proved no particular quantity to the jury.
 
 
 14
 All parties agree that if the case involved more than one kilogram of cocaine, imposition of the special parole term was improper. United States v. Santamaria, 788 F.2d 824 (1st Cir.1986). The only point of disagreement in this case is whether the relevant weight of cocaine includes any diluent or "cut" mixed with the actual cocaine. The Government concedes that the cocaine involved in this offense was the 1187.2 gram quantity found in VanDaalwyk's safe. It also states that the pure weight of the cocaine was 745 grams (a purity of 62.8%), while VanDaalwyk's counsel stated at the sentencing hearing that the cocaine was 50% pure (yielding a pure weight of 593.6 grams). Whichever figure is correct, it is agreed that the pure weight of the cocaine involved in VanDaalwyk's offense is under one kilogram.
 
 
 15
 There is a dearth of authority on the question of whether gross weight or pure weight should be used to trigger the enhanced penalties under the Comprehensive Crime Control Act. The parties have cited no cases directly addressing the issue, and our independent research has found none. The statute was effective for only two years, and in most cases the amount of cocaine was so great or so small that the issue never arose. VanDaalwyk argues that a common-sense reading of the statute would include the weight of the entire mixture of cocaine and diluent. It would be reasonable to imply the language "which is a mixture of a substance containing a detectable amount" in the other subsections of Sec. 841(b)(1)(A). But we are slow to imply a term into a statute. Congress certainly knows how to repeat itself when necessary to make its meaning unambiguous, as the very statute at issue here makes plain.
 
 
 16
 In support of a literal reading of the statute, the Government cites United States v. McGeehan, 824 F.2d 677 (8th Cir.1987), cert. denied, 484 U.S. 1061 (1988), to show that only the pure weight of a drug should be considered. That case involved LSD, which is treated identically with cocaine, although the triggering quantity is different. McGeehan relied on a literal reading of the statute, which made no mention of any "mixture" in regard to LSD offenses.
 
 
 17
 The legislative history supports the Government's literal reading. The Senate Committee report of a predecessor bill to the Comprehensive Crime Control Act stated that the new enhanced penalties for large scale dealers took their triggering quantities of cocaine, PCP and LSD from an amount "approximately equal to 100,000 times the average user dosage." S.Rep. No. 307, 97th Cong. 1st Sess. 868 (1981). If one kilogram represents 100,000 doses, then a single user dose is one one-hundredth of a gram. No end user of cocaine is able to get one hundred doses out of a single gram of cocaine bought on the street--the amount of powder would simply be too small to handle. More realistic is ten doses of ten-percent pure cocaine per gram. Thus, Congress must have intended that only the pure weight be counted.
 
 
 18
 The legislative history of the Anti-Drug Abuse Act of 1986, which clearly made all triggering quantities include diluent, indicates that a change in the law was intended. The House Judiciary Committee's report stated,
 
 
 19
 The Committee strongly believes that the Federal government's most intense focus ought to be on major traffickers, the manufacturers or the heads of organizations, who are responsible for creating and delivering very large quantities of drugs. After consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs, the Committee selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level. The Committee's statement of quantities is of mixtures, compounds or preparations that contain a detectable amount of the drug--these are not necessarily quantities of pure substance. One result of this market-oriented approach is that the Committee has not generally related these quantities to the number of doses of the drug that might be present in a given sample. The quantity is based on the minimum quantity that might be controlled or directed by a trafficker in a high place in the processing and distribution chain.
 
 
 20
 H.R.Rep. No. 845, 99th Cong.2d Sess. 11-12 (1986). The fact that the Committee interviewed prosecutors and DEA agents anew indicates that the inclusion in the new bill of mixtures was not merely a technical corrective amendment. The explicit lack of reliance on specific numbers of usage doses also signals a departure from the earlier law. The new bill set up three tiers of liability instead of the 1984 Act's two tiers. The penalties for middle-level dealers under the new Act were the same as under the existing Act except that the higher fines were authorized and a five-year mandatory minimum sentence was to be imposed. The penalties for high-level dealers under the new Act were higher still, with a mandatory minimum sentence of 10 years.
 
 
 21
 1984 Act 1986 Act
 High level Middle level
Cocaine 1 kg 5 kg 1 kg
PCP 500 g 969 ml (liquid) 28 ml (liquid)
 or 34 g (solid) 10 g (solid)
LSD 5 g 1 g 500 mg
 
 
 22
 Note that it takes only a small fraction of the amounts of PCP or LSD required under the 1984 Act to trigger the highest penalties under the new 1986 Act. Yet the amount of cocaine required to trigger the highest penalties of the new Act is five times higher than the triggering weight for the 1984 Act. Given the general increase in penalties under the 1986 Act, this anomaly suggests that only pure weight was to be considered under the 1984 Act while total weight of the mixture would be considered under the 1986 Act.
 
 
 23
 All of this indicates that the Government's literal reading of Sec. 841(b)(1)(A) is correct. Because all parties agree that the weight of pure cocaine possessed by VanDaalwyk was less than one kilogram, he was properly sentenced under Sec. 841(b)(1)(B) to a term of special parole. The sentence was not unlawful, and the district court's denial of VanDaalwyk's Rule 35(a) motion is
 
 
 24
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The section was amended in 1986 by the Anti-Drug Abuse Act. Thus the statute here in question was in effect only between October 12, 1984 and October 27, 1986
 
 
 [2]
 Subparagraph (C) related to nonnarcotic drugs such as marihuana and hashish